# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# NORTHERN DIVISION

| | |
|---|---|
| JAMES ROBERT WARD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:18CV113 ACL |
| | ) |
| RUANNE STAMPS, et al., | ) |
| | ) |
| Defendants. | ) |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on the motion of plaintiff James Robert Ward, an inmate at the Moberly Correctional Center ("MCC"), for leave to commence this civil action without prepayment of the required filing fee. Having reviewed the motion and the financial information submitted in support, the Court has determined to grant the motion, and assess an initial partial filing fee of $16.12. *See* 28 U.S.C. § 1915(b)(1). Additionally, for the reasons discussed below, the Court will dismiss the complaint, without prejudice.

## 28 U.S.C. § 1915(b)(1)

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action *in forma pauperis* is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these

monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10.00, until the filing fee is fully paid. *Id.*

In support of the instant motion, plaintiff submitted an inmate account statement[1] showing an average monthly balance of $80.62. The Court will therefore assess an initial partial filing fee of $16.12, which is twenty percent of plaintiff's average monthly balance.

## Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed *in forma pauperis* if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. An action is frivolous if it "lacks an arguable basis in either law or fact." *Neitzke v. Williams*, 490 U.S. 319, 328 (1989). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id.* at 679. The court must assume the veracity of well-pleaded facts, but need not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678 (citing *Twombly,* 550 U.S. at 555); *see also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (stating that

---

[1] The inmate account statement was not certified, and plaintiff has filed a motion for an extension of time to file a certified statement. (Docket No. 7). In the motion, plaintiff states he has been trying to obtain a certified copy of the statement, but has been told that obtaining one may take additional time. Given these circumstances, the Court will grant plaintiff *in forma pauperis* status and calculate his initial partial filing fee based upon the uncertified statement, and deny as moot plaintiff's motion for extension of time.

court must accept factual allegations in complaint as true, but "does not accept as true any legal conclusion couched as a factual allegation.").

*Pro se* complaints must be liberally construed. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). This means that if the essence of an allegation is discernible, the court should construe the complaint in a way that permits the plaintiff's claim to be construed within the proper legal framework. *Solomon v. Petray,* 795 F.3d 777, 787 (8th Cir. 2015). However, even *pro se* complaints must allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). Federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint." *Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004).

## The Complaint

Plaintiff brings this action pursuant to 42 U.S.C. § 1983 against Dr. Ruanne Stamps, Nurses Maurita Jenness and Rhonda Burgess,[2] and Corizon. Plaintiff sues the defendants in their official and individual capacities.

According to the complaint, Dr. Stamps caused plaintiff "unwanted pain" when she stopped prescribing Flomax.[3] Plaintiff alleges that an outside doctor had prescribed it. However, he provides no details about who prescribed the medication, or when. Plaintiff alleges that Dr. Stamps decided to withdraw Flomax without taking the necessary steps to ensure plaintiff no longer needed it. In support, he states that Dr. Stamps made her decision after performing only one medical test, and failed to order blood work or an ultrasound to determine whether plaintiff needed the medicine. Plaintiff also alleges Dr. Stamps is unprofessional, and

---

[2] Plaintiff initially identified this defendant as "Jane Doe." However, in a later-filed document, he stated he learned her name is "Rhonda Burgess."
[3] Flomax, or Tamsulosin, is used to treat the symptoms of an enlarged prostate. https://medlineplus.gov/druginfo/meds/a698012.html

that she failed to follow up with outside professionals. Plaintiff alleges this has caused him "not only physical but also mental stress," and he alleges that Dr. Stamps's actions have placed him in danger of prostate enlargement and cancer.

Next, plaintiff alleges that, on November 1, 2018, after he waited in the medication dispensary line for an hour and a half, Jenness failed to give him all of his medication. When plaintiff complained, Jenness told him there was no doctor's order, and that he should speak to the doctor. Plaintiff alleges that Jenness failed to do her job in that she did not ensure that all of plaintiff's medication was there. Plaintiff alleges that the negligence of Jenness "caused the plaintiff to relapse and cause unwanted pain to this plaintiff," and that Jenness "caused unwanted mental relapses [illegible] that could have been life threatening to himself/or others."

Next, plaintiff alleges that, at approximately 9:30 a.m. on November 20, 2018, he visited the medical unit and filled out a health care request to complain of chest pain. He was told to sign in and wait. However, at approximately 11:00 a.m., he left and returned to his housing unit. At approximately 3:15 p.m., an officer in plaintiff's housing unit told him to return to medical, and plaintiff complied. Burgess told plaintiff he should never request medical services and then leave the medical unit without being seen. Plaintiff asked why she waited so long to check on him. Burgess, without checking plaintiff's blood pressure, told plaintiff he was fine and he should return to his housing unit. Plaintiff alleges that Burgess "has no professional personal care for any person that is in real need of treatment. This caused mental and physical harm to the plaintiff." Plaintiff states Burgess's "unprofessional care" is unacceptable, and that it was against Corizon's policies for her to wait so long before checking on him.

Next, plaintiff alleges that Corizon hires "personnel that [are] so reckless in their nursing skill that it is obvious that diagnosing a treatment is dangerous to the patient health." Plaintiff

4

states he accuses Corizon of not taking steps to ensure the doctor's orders are executed. Finally, plaintiff includes information about grievances he filed, and appears to allege that his grievances were improperly handled.

Plaintiff states, without elaboration, that he suffered physical and mental pain, that his heart was damaged, and that his health is diminishing. As relief, he seeks $100,000, and he asks this Court to release the defendants from duty and cause their records to show they engaged in wrongdoing, and cause Corizon to screen its employees.

After filing the complaint, plaintiff filed a Motion to Produce (Docket No. 8/filed January 7, 2019), in which he appears to seek discovery. Subsequently, he filed a supplemental document stating that Jenness continues to make "careless mistakes." He also provided information about the function and importance of the heart, medical treatment records from a different facility, and copies of various forms and literature.

**Discussion**

Plaintiff can be understood to claim that the defendants were deliberately indifferent to his serious medical needs in violation of his rights under the Eighth Amendment, which requires that inmates be provided with adequate medical care. *See Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011). To establish that a denial of medical care rises to the level of an Eighth Amendment violation, an inmate must show that a defendant acted with deliberate indifference. *Id.* The test for deliberate indifference consists of two prongs. *Id.* First, an inmate must show that he "suffered from an objectively serious medical need." *Id.* Second, an inmate must show that the defendant knew of and deliberately disregarded that need. *Id.*

Deliberate disregard is a mental state "equivalent to criminal-law recklessness, which is 'more blameworthy than negligence,' yet less blameworthy than purposely causing or knowingly

bringing about a substantial risk of serious harm to the inmate." *Id.* at 914–15 (quoting *Farmer v. Brennan*, 511 U.S. 825, 835, 839–40 (1994)). Deliberate disregard may be "manifested by prison doctors in their response to the prisoner's needs or by [other prison officials] in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104-105. Allegations amounting to negligence or medical malpractice do not state a claim of constitutional dimension. *See id.* at 106. Instead, an inmate must show that the provider intentionally disregarded "a known risk to the inmate's health." *Gordon ex rel. Gordon v. Frank*, 454 F.3d 858, 862 (8th Cir. 2006).

Significantly, while inmates have a right to adequate medical care, they have no "right to receive a particular or requested course of treatment," and "doctors remain free to exercise their independent medical judgment." *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997). "A prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation." *Meuir v. Greene Cty. Jail Emps.*, 487 F.3d 1115, 1118–19 (8th Cir. 2007) (alteration in original) (citation omitted).

In the case at bar, the Court assumes, for the sake of argument, that plaintiff had an objectively serious medical need. However, plaintiff's allegations do not establish that Dr. Stamps or Nurses Jenness or Burgess were deliberately indifferent to that need. As noted above, this is an onerous standard that requires plaintiff to demonstrate a mental state akin to criminal recklessness.

Regarding Dr. Stamps, plaintiff alleges only that she withdrew Flomax after performing a single medical test, and that she should have ordered blood work or an ultrasound to determine his need for the medicine. Regarding Burgess, plaintiff alleges that she did not check his blood pressure before telling him he was fine and could return to his housing unit. These allegations

establish that Dr. Stamps and Burgess exercised their medical judgment in addressing plaintiff's serious medical need, not that they were deliberately indifferent to it. The Eighth Amendment does not prevent medical professionals from exercising their medical judgment, and plaintiff alleges no facts that establish that Dr. Stamps or Burgess provided a course of treatment that constituted deliberate indifference. *See White v. Farrier*, 849 F.2d 322, 327 (8th Cir. 1988) (medical professionals "are entitled to exercise their medical judgment."). Indeed, Dr. Stamps failed to order medical testing that plaintiff believed was necessary, and Burgess did not check plaintiff's blood pressure. However, "[p]rison officials do not violate the Eighth Amendment when, in the exercise of their professional judgment, they refuse to implement a prisoner's requested course of treatment." *Long v. Nix*, 86 F.3d 761, 765-66 (8th Cir. 1996) (internal citations omitted).

Plaintiff also alleges that Jenness failed to give him all of his medication, telling him there was no doctor's order and that he needed to speak to the doctor. Regarding Burgess, plaintiff alleges she waited too long before checking on his well-being after he voluntarily left the medical unit before he could be seen. Plaintiff also alleges that Dr. Stamps was unprofessional, and failed to order necessary testing. These allegations establish, at most, that Jenness, Burgess, and Dr. Stamps were negligent or committed medical malpractice, not that they intentionally disregarded a known risk to plaintiff's health. As stated above, such allegations do not state claims of constitutional dimension. *See Estelle*, 429 U.S. at 106.

Plaintiff has also named Corizon as a defendant in this matter. However, he sets forth no non-conclusory allegations that he was injured due to any Corizon policies. "A corporation acting under color of state law will only be held liable under § 1983 for its own unconstitutional policies." *Crumpley–Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 590 (8th Cir. 2004)

7

(*citing Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 690 (1978)); *see also Sanders v. Sears Roebuck & Co.*, 984 F.2d 972, 95-76 (8th Cir. 1993). Even if plaintiff had so alleged, he would fail to state a viable claim against Corizon. As discussed above, plaintiff's allegations fall short of alleging any constitutional violation, and there can therefore be no claim against Corizon for any policies leading to one.

Finally, to the extent plaintiff can be understood to complain about the manner in which his grievances were handled, such allegations do not state a claim of constitutional dimension. There is no federally-protected right to a prison grievance procedure, and neither a state law nor a state policy creates one. Therefore, if a state elects to provide a grievance mechanism, violations thereof will not give rise to a § 1983 claim. *See Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993).

Therefore, for all of the foregoing reasons, this action will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B).

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to proceed *in forma pauperis* (Docket No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff must pay an initial filing fee of $16.12 within thirty (30) days of the date of this Order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) the statement that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that plaintiff's motion for an extension of time to file a certified account statement (Docket No. 7) is **DENIED** as moot.

**IT IS FURTHER ORDERED** that this case is **DISMISSED** without prejudice. A separate order of dismissal will be entered herewith.

**IT IS FURTHER ORDERED** that plaintiff's Motion to Appoint Counsel (Docket No. 4) and his Amended Motion to Appoint Counsel (Docket No. 6) are **DENIED** as moot.

**IT IS FURTHER ORDERED** that plaintiff's Motion to Produce (Docket No. 8) is **DENIED** as moot.

**IT IS HEREBY CERTIFIED** that an appeal from this dismissal would not be taken in good faith.

Dated this 18th day of January, 2019.

*/s/ Henry Edward Autrey*
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE